

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED
THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 26, 2021**

**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | CASE NO. 20-43914 |
| CARROLL JAMES LEBOUEF, III and CHALLIS LEE LEBOUEF | CHAPTER 13 |
| Joint Debtors. | |
| KAPITUS SERVICING, INC., as Servicing Agent for Discount Merchant Funding | |
| Plaintiff, | |
| v. | ADVERSARY NO: 21-04022-MXM |
| CARROLL JAMES LEBOUEF, III | |
| Defendant. | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### AND DEFAULT JUDGMENT

Before the Court is the Motion for Default Judgment filed by plaintiff Kapitus Servicing, Inc., as Servicing Agent for Discount Merchant Funding ("Kapitus") pursuant to Rule 7055 of the

Federal Rules of Bankruptcy Procedure, seeking entry of Default Judgment against Defendant Carroll James LeBouef, III ("LeBouef"). Based on the motion, application and the file, the Court now makes the following Findings of Fact and Conclusions of Law and Order for Default Judgment:

**FINDINGS OF FACT**

1. On December 31, 2020 (the "Petition Date"), LeBouef filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas.

2. On April 12, 2021, Kapitus commenced this adversary proceeding against LeBouef by filing its Complaint to Determine Non-Dischargeability of Debt (the "Complaint").

3. On April 13, 2021, the Clerk of Court issued a summons in this adversary proceeding and the summons and Complaint were duly served on LeBouef on April 19, 2021. The Scheduling Order was duly served on LeBouef on April 21, 2021.

4. LeBouef was required to plead or otherwise defend in response to Kapitus's Complaint by May 13, 2021, which time has expired.

5. On May 25, 2021, the Clerk of the Court entered a default against LeBouef having found that no answer, motion, pleading, response, or appearance has been entered by or on behalf of LeBouef.

6. LeBouef has failed to plead or otherwise defend un response to Kapitus' Complaint as required by the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure.

7. LeBouef has failed to appear in this action, and no counsel or other representatives have entered appearances herein on behalf of LeBouef.

8. On or about June 16, 2016, LeBouef executed the Application and subsequently entered into multiple agreements with Kapitus to fund Bullmoose Motor Sports LLC's payment of its business expenses.

9. On or about June 26, 2016, Kapitus received an updated application dated April 11, 2016 from LeBouef, on behalf of Bullmoose Motor Sports, LLC and James Maverick Transportation Services LLC (together, the "Merchants"), seeking $600,000 in financing (the "Application"). In the Application, LeBouef represented that the Merchants had $3,200,000 in gross yearly revenue and had been in business since 2006 with the current ownership in place for 10 years.

10. LeBouef represented in the June attestation letter that the financial information submitted on behalf of Merchants for the period ending March 25, 2016 was pursuant to generally accepted accounting principles, and the financial information was a full, true, complete and accurate statement of all of the assets and liabilities, the condition and affairs of Merchants and its income and deductions as of March 25, 2016. LeBouef further represented, on behalf of Merchants, that: (i) there were no material omissions in the financial information of Merchants; (ii) there were no regulatory or governmental investigations or actions, threatened or ongoing; (iii) there were no Federal, State, or local labor department or tax authority investigations or actions, threatened or ongoing; (iv) there was no litigation, threatened or ongoing, against the Merchants or the principal owners thereof; (v) Merchants were not delinquent in the payment of state or federal taxes of any kind; (vi) Merchants and LeBouef had no outstanding liens, judgments or encumbrances except as set forth in the attestation; and (vii) Merchants had not received any financing in the past 90 days and were not currently in the process of receiving any financing that had not been disclosed to Kapitus.

11. LeBouef represented in the July attestation letter that the financial information submitted on behalf of Merchants for the period ending March 31, 2016 was pursuant to generally accepted accounting principles, and the financial information was a full, true, complete and accurate statement of all of the assets and liabilities, the condition and affairs of Merchants and its income and deductions as of March 31, 2016. LeBouef further represented, on behalf of Merchants, that: (i) there were no material omissions in the financial information of Merchants; (ii) there were no regulatory or governmental investigations or actions, threatened or ongoing; (iii) there were no Federal, State, or local labor department or tax authority investigations or actions, threatened or ongoing; (iv) there was no litigation, threatened or ongoing, against the Merchants or the principal owners thereof; (v) Merchants were not delinquent in the payment of state or federal taxes of any kind; (vi) Merchants and LeBouef had no outstanding liens, judgments or encumbrances except as set forth in the attestation; (vii) Merchants had not received any financing in the past 90 days and were not currently in the process of receiving any financing that had not been disclosed to Kapitus.

12. The financial statements of the Merchants provided to Kapitus reflected average daily bank balances of over $100,000 in 2016; the 2016 P&L Statement reflected approximately $5,300,000 in total income, approximately $991,000 in gross profits and approximately $613,000 in net income as of June 2016; the 2016 balance sheet reflected approximately $148,000 in accounts receivable, approximately $123,000 in cash, over $3,100,000 in inventory, over $110,000 in loan receivables, a current tax liability of approximately $7,000, sales tax and registration fees of approximately $26,000, equity of approximately $1,700,000 as of March 25, 2016.

13. On or about June 21, 2016, LeBouef, in his capacity as owner and representative of the Merchants, and in his individual capacity as guarantor, executed a Revenue Based Factoring (RBF/ACH) Agreement (the "June Agreement") with Kapitus. The June Agreement is governed by New York law. *See* June Agreement, § 4.5.

14. Pursuant to the June Agreement, Kapitus purchased $393,000.00 of future receipts, accounts, contract rights and other obligations generated in the course of Merchant's business operations (the "June Agreement Receivables"). Contemporaneously with the execution of the June Agreement, and as further security, LeBouef executed a personal guaranty, guaranteeing Merchants' full performance of all terms and obligations under the June Agreement (the "June Guaranty"). A true and correct copy of the June Guaranty is attached as part of the June Agreement. Under the terms of the June Agreement, Kapitus is designated as the authorized servicing agent to service and enforce the agreement, including enforcement through legal action.

15. On or about June 29, 2016, Kapitus paid LeBouef $300,000.00 as the agreed purchase price for the June Agreement Receivables.

16. On or about July 26, 2016, LeBouef, in his capacity as owner and representative of the Merchants, and in his individual capacity as guarantor, executed a Revenue Based Factoring (RBF/ACH) Agreement (the "July Agreement" and together with the June Agreement, the "Agreements") with Kapitus. The July Agreement is governed by New York law. *See* Agreement, § 4.5.

17. Pursuant to the July Agreement, Kapitus purchased $393,000.00 of future receipts, accounts, contract rights and other obligations generated in the course of Merchant's business operations (the "July Agreement Receivables" and together with the June Agreement Receivables, the "Receivables"). Contemporaneously with the execution of the July Agreement, and as further

security, LeBouef executed a personal guaranty, guaranteeing Merchants' full performance of all terms and obligations under the July Agreement (the "July Guaranty," together with the June Guaranty, the "Guaranty"). A true and correct copy of the July Guaranty is attached as part of the July Agreement. Under the terms of the July Agreement, Kapitus is designated as the authorized servicing agent to service and enforce the agreement, including enforcement through legal action.

18. On or about July 27, 2016, Kapitus paid LeBouef $300,000.00 as the agreed purchase price for the July Agreement Receivables.

19. In executing the Agreements, LeBouef agreed that all information provided in forms and recorded interviews was "true, accurate, and complete in all respects", and the Agreement further emphasized that "**ANY MISREPRESENTATION MADE BY MERCHANT OR [DEBTOR] IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FUNDING.**" *See* Agreements at p. 1 (emphasis in original).

20. In reliance on the false representations made by LeBouef in the Funding Calls, the Agreements and the financial statements provide to Kapitus, Kapitus agreed to purchase certain of Merchants' Receivables, as outlined above.

21. To allow Kapitus to collect its purchased Receivables, the Agreements required Merchant to use only a single, specified depositing account to deposit all Receivables collected by Merchant, which was designated by the parties in the Agreement and fully accessible to Kapitus. See Agreements, p. 1 & pp. 3–4 §§ 1.1, 2.7. From this account, the Agreement entitled Kapitus to collect 5% of the batch amount of Merchants' receivables via Automated Clearing House ("ACH") in a weekly amount of $9,360 through debits from the Account under each Agreement. See

Agreements, p. 3, §2.7. The authorization for Kapitus to use the Account to make such transfers is irrevocable by Merchant without Kapitus's consent. *See* Agreements, p. 2, §1.1. To avoid disruption, the Agreements prohibited changes to the account or the designation of the deposit account except with Kapitus' express written consent. *See* Agreements, p. 3 §1.1.

22. Almost immediately after its execution by the parties, LeBouef and Merchants materially violated the terms of the Agreements. Within weeks of the fundings, LeBouef closed the bank account from which the payments were drawn.

23. In connection with the June Agreement, the Merchants made their last payment on or about September 13, 2016, leaving a contract balance of $310,995 as of such date; thus, only ten ACH payments in the total amount of $82,005.00 (plus an ACH debit modification fee) were authorized and attempted before LeBouef closed the account.

24. In connection with the July Agreement, the Merchants made their last payment on or about September 13, 2016, leaving a contract balance of $348,430 as of such date; thus, only six ACH payments in the total amount of $44,565.00 (plus an ACH debit modification fee) were authorized under the July Agreement before LeBouef closed the account.

25. Accordingly, Kapitus drew only sixteen out of the eight-two agreed payments or approximately 16% of the total amount owed collectively under the Agreements.

26. As of September 13, 2016, LeBouef willfully prohibited Plaintiff from collecting on the Receivables rightfully owed to it.

27. As a result, Plaintiff has been unable to collect its daily percentage of Receivables purchased from Merchants since September 2016.

28. Appendix A of the of the Agreements provide for a $2,500.00 "Blocked Account Fee" and $5,000 "Default Fee" when the Merchants default under the terms of the Agreements.

This fee was applied to the balance due to Merchants closing their account and not authorizing the debit.

29. LeBouef also incurred ACH Debit Fees in the amount of $790.00.

30. Further, Kapitus is entitled to receive interest on the amounts due and owing pursuant to the statutory rate of 9% under New York law. Interest accruing from September 15, 2016 (the date of default) to December 31, 2020 (the Petition Date) is $261,226.53.

### CONCLUSIONS OF LAW

31. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

32. By failing to answer the Complaint, LeBouef is in default under Fed. R. Civ. P. 55, as incorporated by Fed. R. Bankr. P. 7055 and, accordingly, Kapitus is entitled to entry of default judgment against LeBouef.

33. The damages sustained by Kapitus and caused by LeBouef constitute money, property, and/or credit obtained by LeBouef from Kapitus through LeBouef's false representations of fact. LeBouef knew his representations to be false at the time they were made. LeBouef made the representations with the intent and purpose of deceiving Kapitus. Kapitus justifiably relied on LeBouef's misrepresentations. Kapitus sustained damages in the amount of $936,446.53, as of December 31, 2020, as the proximate result of LeBouef's misrepresentations.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that:

34. Final judgment in the amount of $936,446.53, plus interest at the federal judgment rate commencing on the date of entry of this order, is entered in favor of Plaintiff Kapitus Servicing, Inc. and against Defendant Carroll James LeBouef, III.

### END OF ORDER ###

Order Submitted by:

/s/ *Charles M. Rubio*
PARKINS LEE & RUBIO LLP
Charles M. Rubio P.C.
TX Bar No. 24083768
50 Main Street, Suite 1000
White Plains, NY 10606